UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARIE W.,

                 Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of Social Security,[1]

                 Defendant.

CASE NO. C19-5232-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda, this matter is REMANDED for further administrative proceedings.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1960.[2] She completed high school and training as a licensed practical nurse (LPN) and a certified nursing assistant (CNA). (AR 40-41, 227.) She previously worked as an administrative clerk, LPN, CNA, patient transporter, and transcribing-machine

---

[1] Andrew M. Saul is now Commissioner of the Social Security Administration (SSA). Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted for Nancy A. Berryhill as defendant.

[2] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

operator. (AR 25.)

Plaintiff protectively filed for DIB in September 2015, alleging disability beginning September 2, 2015. (AR 206.) The application was denied initially and on reconsideration. ALJ C. Howard Prinsloo held a hearing on March 6, 2018, taking testimony from plaintiff and a vocational expert (VE). (AR 33-74.) On July 2, 2018, the ALJ found plaintiff not disabled. (AR 15-27.)

Plaintiff timely appealed. The Appeals Council denied the request for review on February 21, 2019 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ noted plaintiff had worked after the alleged onset date and was currently working part-time, but the activity did not raise to the level of substantial gainful activity (SGA). Plaintiff therefore had not engaged in SGA since the application date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's anxiety disorder with a history of benzodiazepine abuse, affective disorder, and personality disorder severe. He found body dysmorphic disorder, cervical herniated discs, and a very recent fractured pelvis did not constitute severe impairments. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal a listing.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform a full range of work at all exertional levels, but able to have only brief and superficial interaction with the public or co-workers and limited to simple, routine, and repetitive tasks. With that RFC, plaintiff could not perform any past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the VE's assistance, the ALJ found plaintiff able to perform other jobs, such as work as a housecleaner, conveyor feeder-offbearer, and laboratory equipment cleaner.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff avers error at step two and in relation to medical opinions, symptom and lay testimony, and other evidence. She requests remand for further proceedings. The Commissioner

argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## Step Two

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. § 404.1520(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* (citing *Bowen*, 482 U.S. at 153-54). An ALJ is also required to consider the "combined effect" of an individual's impairments in considering severity. *Id.* A diagnosis alone is not sufficient to establish a severe impairment. Instead, a claimant must show her medically determinable impairments are severe. 20 C.F.R. § 404.1521.

Plaintiff argues the ALJ erred in concluding her body dysmorphic disorder (BDD) was not a severe impairment. The ALJ stated: "[S]he testified as to her extensive work history despite this impairment." (AR 18.) The ALJ further stated the record did not reflect any limitations as a result of this and other conditions deemed not severe.

Plaintiff testified her BDD symptoms worsened over time, resulting in disruption of her work, increased absences and medical leaves, changes in jobs in attempts to reduce symptoms, and ultimately the loss of her job. (*See* AR 42-46, 48-56.) The record contains evidence consistent with this testimony, including plaintiff's reporting, reports from a lay witness and various medical providers, and documentation of leave from her prior employer. (*See, e.g.*, AR 258, 383-84, 675-

ORDER
PAGE - 4

76, 687-702, 704-05, 826, 828.)[3] Given this evidence, the mere fact plaintiff previously worked with this condition does not suffice as a basis to find it non-severe. The ALJ also erred in considering medical opinion and other evidence associated with BDD, as discussed below. The ALJ's failure to sufficiently address the evidence associated with BDD at step two and beyond necessitates remand for further proceedings.

## Symptom Testimony

The rejection of a claimant's subjective symptom testimony[4] requires the provision of specific, clear, and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

The ALJ found plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely consistent with the medical and other evidence in the record. He found inconsistency with plaintiff's activities. (AR 22 (pointing to, *inter alia*, caring for two dogs, no need for self-care special reminders, meal preparation and housework, driving a car, grocery shopping, visiting with sons and friends, and spending time on iPad and Facebook).) He

---

[3] Some of this evidence predates the September 2015 alleged onset date. (AR 704-05 (March 14, 2014: "BDD is linked to diminished quality of life; usually includes major depressive disorder & social phobia. [Claimant] has had extensive therapy by psychologists, psychiatrists & social worker. After a battery of tests back in 2006 she was diagnosed with non-delusional [BDD]. [Treatment] included psychotherapy, medication management, cognitive behavioral therapy and exposure therapy. This disorder, per the DSM manual 'has a fairly continuous course, with few symptom-free intervals, although the intensity of the symptoms may wax and wane over time.'")) However, the evidence is relevant given that the ALJ relied on work history evidence predating the alleged onset date to find this condition non-severe.

[4] Effective March 28, 2016, the SSA eliminated the term "credibility" from its policy and clarified the evaluation of subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

ORDER
PAGE - 5

also stated that, while plaintiff treated longitudinally for her mental health impairments, she had "mostly normal mental status exams [(MSEs)] throughout the relevant period." (AR 22 (citing AR 680, 722, 760, 790-91, 798, 802-05, 826).) The ALJ also earlier pointed to evidence plaintiff worked part-time, but below SGA levels during the relevant time period and as of the hearing date (AR 18), and described the medical record, including performance on testing and in MSEs and reports of applying for part-time work, taking steps toward taking classes, volunteering doing yard work, and advertising yard services (AR 21-22).

An ALJ properly considers whether the medical evidence supports or is consistent with a claimant's allegations, 20 C.F.R. § 404.929(c)(4), and may reject symptom testimony upon finding it inconsistent with or contradicted by evidence in the medical record. *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). An ALJ also properly considers inconsistency with activities, *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1227 (9th Cir. 2009); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007), as well as evidence associated with a claimant's work, *see, e.g.*, *Bray*, 554 F.3d at 1221; *Smolen*, 80 F.3d at 1284; and *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992). The ALJ in this case did, as such, provide appropriate reasons for not accepting plaintiff's testimony as to the degree of her impairment. However, the error at step two and the errors described below necessitate reconsideration of plaintiff's testimony on remand.

### Medical Opinions and Other Evidence

The ALJ is responsible for assessing the medical evidence and resolving any conflicts or ambiguities in the record. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle*, 533 F.3d at 1164. When evidence reasonably supports either confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester*, 81 F.3d at 830. Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "'clear and convincing'" reasons. *Id*. (quoted source omitted). Where contradicted, the opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoted source omitted). Opinions offered by other sources, such as counselors, may be assigned less weight, *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996), and discounted with the provision of germane reasons, *Molina*, 674 F.3d at 1111 (cited sources omitted). Likewise, the statements of lay witnesses may be discounted with reasons germane to the witness. *Smolen*, 80 F.3d at 1288-89.

Plaintiff argues the ALJ erred in considering and selectively citing to medical evidence and in discounting the opinions of treating doctor Dr. Cassandra Giedt, treating therapist Suzanne Oelke, and consultative examiner Dr. Kathleen Anderson. She avers error in the assignment of great weight to the contradictory opinions of Drs. Jan Lewis and Kent Reade, non-examining State agency psychologists. Plaintiff also maintains error in the consideration of evidence associated with her physical impairments and in the rejection of evidence from a lay witness.

A. <u>Dr. Kathleen Anderson</u>

The ALJ gave only partial weight to Dr. Anderson's October 2015 opinion plaintiff would not have difficulty with at least simple, straightforward instructions, may not have problems actually carrying out job responsibilities to the satisfaction of her supervisors, and would have a great deal of discomfort if she had to interact with others for more than short periods. (AR 23, 681.) The ALJ found the opinion partially consistent with plaintiff's medical records. As with the

symptom testimony, the ALJ observed that, while plaintiff treated longitudinally for her mental health impairments, she had "mostly normal [MSEs] throughout the relevant period." (AR 23 (citing AR 680, 722, 760, 790-91, 798, 802-05, 826).) He cited to the same records as showing plaintiff had intact memory, was calm, cooperative, pleasant, and friendly, with normal attention and concentration, had good appearance, and was well groomed. (*Id.*) The ALJ also pointed to Dr. Anderson's findings on MSE, including the ability to repeat a four-digit number backward; to relate in a cooperative fashion and make good eye contact; her report she likes people, has friends, and goes out five-to-six times a month; her ability to perform "serial 3" subtractions rapidly with one mistake and to spell "world" forward and backward; her report of performing all activities of daily living; and her adequate grooming. (AR 23, 680.)

As plaintiff observes, the ALJ did not fully describe or adequately consider the evidence from Dr. Anderson. Dr. Anderson discussed plaintiff's BDD in detail, including her history with this condition, her symptoms, and its effect on her work. (AR 681.) Dr. Anderson noted, for example, plaintiff's report she "stopped working as an LPN because she felt her preoccupation with her appearance interfered with her ability to tend to patients[,]" and that, despite a great deal of therapy, insight into her mental health problems, and extensive medication trials, plaintiff reported "leaving her last job in September of this year because of the stress of having to contend with her appearance preoccupations in her work environment." (*Id.*) Dr. Anderson opined plaintiff's reported prior difficulty in working a twelve-hour shift "which was far too long for her to feel comfortable out where she could be looked at by others[,]" would, "[i]f she were to return to work, . . . undoubtedly be an issue over the course of a more normal eight-hour work shift." (*Id.*) Dr. Anderson stated, while plaintiff may not have problems actually carrying out job responsibilities satisfactorily, "she would again be in a great deal of turmoil as she has described

being at her last job." (*Id.*) Dr. Anderson further opined, if plaintiff "were able to adapt to any sort of job at all, it would likely be something like medical transcription from home, as she has done in the past[,]" and, because "she remains significantly symptomatic despite extensive treatment, her prognosis for marked improvement is very guarded." (AR 681.)

The ALJ should consider the entirety of Dr. Anderson's opinion on remand. The ALJ should also, here and throughout the decision, reassess the evidence of plaintiff's performance on MSEs, not all of which provides support for the ALJ's conclusion. (*See, e.g.*, AR 722 (minimizing, perseverative speech, anhedonic mood/affect, limited insight, intrusive thoughts, and intermittent incongruencies in reporting); AR 798 (depressed, anxious mood and anxious affect; "[claimant] has high levels of stress, anxiety, and social phobia, heightened when she is feeling particularly negative about her appearance"); AR 802 (anhedonic mood); and AR 826 (blunted affect, dysphoric, anxious mood).)

B.  Dr. Cassandra Giedt

Dr. Giedt wrote letters dated on April and May 26, 2016, stating plaintiff suffered from disabling BDD and depression and, in the second letter, that she would be unable to work for at least twelve months due to her limitations. (AR 711-12.) In a December 8, 2017 medical source statement, Dr. Giedt opined plaintiff had some limitations in sustained concentration and persistence and moderate to significant limitations in adaptation. (AR 829-31.) She assessed the limitations as lasting at least twelve continuous months and stated: "[Patient] has BDD. Has severe anxiety because of this. Cannot work in an unfamiliar and constantly changing setting." (AR 830-31.)

The ALJ gave little weight to the opinions in the letters, as they were not a function-by-function analysis, failed to consider evidence of Benzodiazepine abuse, and were inconsistent with

plaintiff's work history: "She testified that she overdosed on Benzodiazepines and she had a significant work history despite her [BDD]." (AR 24.) The ALJ also pointed to the examination findings from Dr. Anderson and to the same evidence from other MSEs in the record as cited in the rejection of Dr. Anderson's opinion. The ALJ similarly gave little weight to Dr. Giedt's functional assessment, finding it inconsistent with the medical record and again citing to the same evidence from Dr. Anderson and the other MSEs in the record. (AR 24-25.)

Plaintiff denies the evidence of a one-time overdose resulting in a hospitalization negates her diagnoses or resulting limitations and states no provider has even inferred the existence of Benzodiazepine abuse. The record does, however, contain other evidence associated with the abuse or misuse of prescription medication. (*See, e.g.*, AR 398, 400 (March 31, 2016: "She took some Percocet of her sister's last September 'to feel better.' She reports stole a whole bottle and it bothers her."; "She reports that she will occasionally take far more Klonopin that recommended (e.g. 9 at a time instead of 2) or a opiate pain pill to 'feel better.' . . . She does not meet criteria for an active substance abuse disorder diagnosis at this time, but continued evaluation is warranted[.]"); AR 761 (November 23, 2016: hospitalization after ingesting Clonopin, Vicodin, and alcohol; "Patient states that she does have a history of overdose 3 to 4 years ago which did not require medical attention."); and AR 804 (February 2, 2017: "[patient] has been overusing her benzos from [primary care provider] recently."))  Nor did the ALJ err in observing the letters from Dr. Giedt did not contain functional limitations. *See McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010) ("A treating physician's evaluation of a patient's ability to work may be useful or suggestive of useful information, but a treating physician ordinarily does not consult a [VE] or have the expertise of one. An impairment is a purely medical condition. . . . The law reserves the disability determination to the Commissioner. Rejection of the treating physician's opinion on

ability to perform any remunerative work does not by itself trigger a duty to contact the physician for more explanation.") (quoted and cited sources omitted); 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

The Court does, however, otherwise agree with plaintiff that the opinion evidence from Dr. Giedt should be reconsidered on remand. That is, the ALJ's errors in relation to BDD and Dr. Anderson implicate the reasoning relied upon for rejecting the opinion of Dr. Giedt. *See also supra* n. 3 (discussing other relevant evidence from Dr. Giedt (AR 704-05)). The ALJ should also here, as elsewhere, reassess the MSE evidence.

C.  Suzanne Oelke, LMHCA

In a letter dated June 15, 2016, Oelke stated plaintiff was unable to work for at least twelve months due to major depressive disorder, recurrent, and BDD. (AR 827.) In a letter dated October 25, 2016, Oelke described plaintiff's BDD and post-traumatic stress disorder (PTSD) and opined, while she could work part time, "the stress of full time work would produce further symptomology." (AR 828.) Oelke described plaintiff's symptoms and stated her PTSD functional limitations "would greatly improve with further psychotherapy." (*Id*.) The ALJ provided identical reasons for assigning little weight to this opinion as he did for Dr. Giedt. (AR 24.) The Court finds further consideration of this evidence necessary for the reasons described above.

D.  Other Opinions and Evidence

The ALJ assigned great weight to the opinions of Drs. Lewis and Reade (AR 84-85, 98-99), finding them consistent with the medical record and pointing to the evidence from Dr. Anderson and other MSEs in the record. (AR 23.) Also pointing to the same evidence, as well as a lack of medical training, the ALJ assigned little weight to a third-party function report

completed by plaintiff's friend, finding it inconsistent with the objective medical evidence and medical opinions. (AR 22, 251-58.) The errors described above also necessitate further consideration of these medical opinions and the lay testimony. The ALJ should, in addition, consider a March 9, 2017 letter from Nathan Rhoads, LMHCA. (AR 383.) Finally, while it is not clear the ALJ erred in considering evidence associated with physical impairments (*see* AR 18), he should take the opportunity on remand to consider all evidence associated with cervical degenerative disc disease and a fractured pelvis (*see, e.g.*, AR 834-35), at step two and beyond.

## **CONCLUSION**

For the reasons set forth above, this matter is REMANDED for further proceedings.

DATED this 30th day of October, 2019.

Mary Alice Theiler
United States Magistrate Judge